# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MANILA VICHITVONGSA, ) | |
| ) | |
| Petitioner, ) | |
| ) | NO. 3:17-cv-01329 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM

### I. Introduction

Pending before the Court are Petitioner's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Doc. Nos. 1, 2); an Amended Motion to Vacate, Suspend or Set Aside Sentence Under 28 U.S.C. § 2255 (Doc. No. 10), filed by counsel for Petitioner; a Second Amended Motion to Vacate, Suspend or Set Aside Sentence Under 28 U.S.C. § 2255 (Doc. No. 31); the Government's Response (Doc. No. 17); Petitioner's Reply (Doc. No. 18); Petitioner's Supplemental Briefs (Doc. Nos. 22, 23, 24, 25, 27, 28, 32); Petitioner's Motion for Modification of Sentence Pursuant to Supreme Court Decision in *U.S. v. Davis* (Doc. No. 46); the Government's Position on Effect of Supreme Court's *Davis* Decision (Doc. No. 49); and Petitioner's [Supplemental] Reply (Doc. No. 52).

For the reasons set forth herein, Petitioner's Motions to Vacate (Doc. Nos. 1, 2, 10, 31) and Motion for Modification (Doc. No. 46) are **GRANTED** in part, and **DENIED** in part. Accordingly, the Court will vacate Petitioner's convictions for violations of 18 U.S.C. § 924(c) and enter an amended judgment in Criminal Case No. 3:12-cr-00013. The Clerk of Court is directed to file a

copy of this Memorandum and Order in Criminal Case No. 3:12-cr-00013.

Petitioner's Motion for Evidentiary Hearing (Doc. No. 19), and Motions for Hearing (Doc. Nos. 26, 53) are **DENIED,** for the reasons set forth herein.

## II. Petitioner's Criminal Proceedings

Petitioner was indicted, along with seven other defendants, on charges arising out of two separate home invasion robberies – the first, occurring on June 10, 2011, in La Vergne, Tennessee, and the second, occurring on June 27, 2011, in Smith County, Tennessee. (Doc. Nos. 78, 1012 in Case No. 3:12-cr-00013). In connection with each home invasion robbery, the Indictment charged Petitioner with participating in a conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951; participating in a conspiracy to engage in drug trafficking, in violation of 21 U.S.C. § 846; and two counts charging a violation of 18 U.S.C. § 924(c),[1] each based on one of the charged conspiracies. (Doc. No. 78 in Case No. 3:12-cr-00013).

---

[1] Section 924(c) provides:

> (c)(1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>
> (i) be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

2

Case 3:17-cv-01329   Document 55   Filed 06/11/20   Page 2 of 16 PageID #: 268

After a week-long trial, before now-retired Judge Todd J. Campbell, Petitioner was convicted on all counts. (Doc. Nos. 730, 732 in Case No. 3:12-cr-00013). The Sixth Circuit summarized the evidence adduced at trial, as follows:

> Within the span of two weeks in June 2011, defendant Vichitvongsa planned and executed two armed robberies (in LaVergne and Smith County, Tennessee) with several co-conspirators with the hopes of stealing hundreds of thousands of dollars and large amounts of illegal drugs from two drug dealers. Each robbery was violent. They ransacked houses, restrained and beat victims, and shot one man in the chest. Neither robbery accomplished what defendant and his co-conspirators intended; they failed to locate money and drugs, and instead resorted to stealing a few miscellaneous items.
>
> *The LaVergne Robbery*
>
> On June 11, 2011, defendant met several co-conspirators outside a restaurant in suburban Nashville. There they planned to rob the residence of Chris Leggs, a cocaine dealer. Leggs's residence was in LaVergne, a neighboring suburb. They believed it contained hundreds of thousands of dollars and several kilograms of cocaine. Co-conspirator Nickless Whitson came up with the idea to rob the house, and he and defendant told the others about the amount of money and cocaine they expected to be at the house.
>
> The co-conspirators then drove to the house. Two caused a distraction, while the others forced their way inside. Four carried guns, including defendant. They threatened and assaulted the sole occupant, Dominique Baker, and tied her up while they ransacked the house. After searching for money and drugs for 30 to 45 minutes to no avail, they took a few guns and jewelry, and left.
>
> *The Smith County Robbery*
>
> About two weeks after the LaVergne robbery, Vichitvongsa and others concocted a plan to rob Daniel Crowe's house, a marijuana dealer in Smith County, Tennessee. William Byrd had purchased marijuana from Crowe to sell on a by-the-pound basis. Byrd, who did not play a role in the LaVergne robbery, told defendant that he was 'under the impression that there was a large amount of money' at Crowe's house, '[a]round $300,000.' Although Byrd never told defendant there was marijuana at Crowe's house, defendant told others there would be extensive amounts of marijuana there. Defendant indicated he wanted to rob the house, and a few days before the robbery, Byrd escorted Whitson and defendant to the house for reconnaissance purposes.

3

On June 27, 2011, the robbers met at a Home Depot, purchased zip ties, and caravanned to Crowe's residence. Four, including defendant, entered the house—armed—while two remained outside. They tied up Crowe's mother and stepfather, Lorraine and William Webb, and began searching the house. The robbers threatened to harm the Webbs, with one suggesting they light Lorraine Webb on fire. William Webb eventually freed himself and lunged with a plastic sheath at a robber, who shot him in the chest. Others fired shots as well. The robbers fled shortly thereafter, taking items they found in the house—including guns and grow lamps—in the Webbs's car.

*United States v. Vichitvongsa*, 819 F.3d 260, 264–65 (6th Cir. 2016)

At the subsequent sentencing hearing, Judge [Todd] Campbell imposed a total sentence of 1,219 months of imprisonment on the eight counts of conviction, as follows:

- Count 1 (Hobbs Act robbery conspiracy) - 235 months, concurrent with Counts 3, 5 and 7;

- Count 2 (Section 924(c) – Brandishing – linked to Hobbs Act conspiracy) - 84 months, consecutive to Counts 1, 3, 5 and 7;

- Count 3 (Drug trafficking conspiracy) - 235 months, concurrent with Counts 1, 5 and 7;

- Count 4 (Section 924(c) – Brandishing – linked to drug trafficking conspiracy) - 300 months, consecutive to Counts 1, 2, 3, 5 and 7;

- Count 5 (Hobbs Act robbery conspiracy) - 235 months, concurrent with Counts 1, 3 and 7;

- Count 6 (Section 924(c) – Discharge – linked to Hobbs Act conspiracy) - 300 months, consecutive to Counts 1, 2, 3, 4, 5 and 7;

- Count 7 (Drug trafficking conspiracy) - 60 months, concurrent with Counts 1, 3 and 5; and

- Count 8 (Section 924(c) – Discharge – linked to drug trafficking conspiracy) - 300 months, consecutive to all other Counts.

(Doc. Nos. 896; 897, 958 in Case No. 3:12-cr-00013).

On appeal, the Sixth Circuit rejected Petitioner's arguments based on insufficiency of the

4

evidence and the Double Jeopardy Clause, but sustained his challenge to the four Section 924(c) convictions, holding that "the simultaneous violation of two federal conspiracy statutes cannot support two § 924(c) charges on the sole basis of one firearm use." *United States v. Vichitvongsa*, 819 F.3d at 264; (Doc. No. 1012, at 2, in Case No. 3:12-cr-00013). The court remanded the case with instructions to vacate one of Petitioner's Section 924(c) convictions for each home invasion. *Id.*

On remand, Judge [Todd] Campbell ordered the parties to file briefs stating their positions on the Sixth Circuit's remand instructions. (Doc. No. 1029 in Case No. 3:12-cr-00013). Both parties requested the court vacate the two Section 924(c) counts that were linked to the drug trafficking conspiracy offense, specifically, Counts 4 and 8. (Doc. Nos. 1030, 1031 in Case No. 3:12-cr-00013). Judge Campbell granted the parties' request, and entered an Amended Judgment (Doc. Nos. 1034, 1035 in Case No. 3:12-cr-00013), vacating Counts 4 and 8, and reducing Petitioner's sentence by 600 months to a total sentence of 619 months of imprisonment.

### III. Analysis

#### A. Section 2255 Proceedings

Petitioner has brought this action pursuant to 28 U.S.C. § 2255. Section 2255 provides a statutory mechanism for challenging the imposition of a federal sentence:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). In order to obtain relief under Section 2255, a petitioner "'must demonstrate

5

the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States,* 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003)).

If a factual dispute arises in a § 2255 proceeding, the court is to hold an evidentiary hearing to resolve the dispute. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). An evidentiary hearing is not required, however, if the record conclusively shows that the petitioner is not entitled to relief. 28 U.S.C. § 2255(b); *Ray,* 721 F.3d at 761; *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999). A hearing is also unnecessary "'if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Monea v. United States,* 914 F.3d 414, 422 (6th Cir. 2019) (quoting *Valentine v. United States,* 488 F.3d 325, 333 (6th Cir. 2007)).

Having reviewed the record in Petitioner's underlying criminal case, as well as the filings in this case, the Court finds it unnecessary to hold an evidentiary hearing because disposition of Petitioner's claims does not require the resolution of any factual dispute.

**B.  Petitioner's Claims**

Through his Motions to Vacate, Petitioner asserts the following claims: (1) the Section 924(c) convictions are invalid under *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015); (2) the Indictment was multiplicitous in violation of the Double Jeopardy Clause; (3) the evidence supporting the drug trafficking conspiracy convictions was insufficient; and (4) he received the ineffective assistance of counsel.

**C.  Petitioner's Section 924(c) Convictions**

In *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015), the

6

Supreme Court held the so-called "residual clause" of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), was unconstitutionally vague. The ACCA imposes a 15-year mandatory minimum sentence for defendants convicted of certain firearms offenses who have three previous convictions for a "violent felony" or a "serious drug offense." 18 U.S.C. § 924(e)(1). The "residual clause" is part of the italicized definition of "violent felony" as set forth below:

> (2) As used in this subsection–
>
> * * *
>
> > (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that –
> >
> > > (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> > >
> > > (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another. . .*

(emphasis added).

Based on *Johnson,* Petitioner challenged his convictions under 18 U.S.C. § 924(c), contending they are no longer valid because the definition of "crime of violence" applicable to the offense contains a "residual clause" similar to that invalidated in *Johnson*. The definition of "crime of violence," for purposes of Section 924(c), provides as follows, with the "residual clause" set forth in italics:

> (3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and--
>
> > (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> >
> > (B) *that by its nature, involves a substantial risk that physical force*

7

> *against the person or property of another may be used in the course of committing the offense.*

In the absence of the residual clause, Petitioner argues, the offense referenced in his Section 924(c) charges, conspiracy to commit Hobbs Act robbery, may no longer be considered to be a "crime of violence" under the statutory definition.

While this case was pending, the Supreme Court held, in *United States v. Davis,* ___ U.S. ___, 139 S. Ct. 2319, 204 L.Ed.2d 757 (2019), that the residual clause of Section 924(c)(3)(B) is unconstitutionally vague. In its most recent brief (Doc. No. 49), the Government agrees that, in light of *Davis*, Petitioner's Section 924(c) convictions should be vacated. *See United States v. Ledbetter*, 929 F.3d 338, 361 (6th Cir. 2019) (invalidating Section 924(c) conviction based on predicate offense of conspiracy to commit Hobbs Act robbery where government relied only on residual clause). Accordingly, the Court concludes Counts 2 and 6 should be vacated.

Vacating Petitioner's Section 924(c) convictions will require resentencing on the remaining counts of conviction. In *Davis,* the Court recognized "[w]hen a defendant's § 924(c) conviction is invalidated, courts of appeals 'routinely' vacate the defendant's entire sentence on all counts 'so that the district court may increase the sentences for any remaining counts' if such an increase is warranted.'" 139 S. Ct. at 2336 (citing *Dean v. United States,* 581 U.S. ___, 137 S. Ct. 1170, 1176, 197 L. Ed. 2d 490 (2017)). Issues regarding resentencing will be decided in the underlying criminal case, after the preparation of a revised presentence investigation report and appropriate briefing.

Although conceding these convictions should be vacated, the Government goes on to argue the Court should reinstate Petitioner's Section 924(c) convictions on Counts 4 and 8, which, as noted above, were vacated after remand in an Amended Judgment entered on November 21, 2016.

(Doc. Nos. 1034, 1035). The Government points out that the *Davis* decision does not affect the validity of these convictions, and that the Sixth Circuit's opinion did not specify which Section 924(c) convictions had to be vacated on remand. Thus, the Government argues, the vacated convictions are not otherwise invalid. The Court is not persuaded, however, that Section 2255 permits amendment of a judgment to "reinstate" vacated convictions.

Section 2255(a) permits "[a] prisoner in custody" to move the sentencing court to "vacate, set aside or correct the sentence." If the court finds the prisoner's claim is meritorious, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). The plain language of the statute does not contemplate amending a judgment to "reinstate" a conviction that was vacated over three years earlier. *See Diri v. United States,* 2019 WL 5076388, at *3 (W.D.N.C. Oct. 9, 2019) ("Section 2255 permits discharge, resentencing, a new trial, or sentence correction, but it does not permit the type of substitution of one offense for another that the Government urges."); *United States v. Flack,* 941 F.3d 238, 241 (6th Cir. 2019) ("A district court 'corrects' a defendant's sentence when its action is arithmetical, technical, or mechanical.")

The Government cites the Seventh Circuit's decision in *Rutledge v. United States,* 230 F.3d 1041 (7th Cir. 2000), as support for its position. In *Rutledge,* the defendant was convicted and sentenced for conducting a continuing criminal enterprise ("CCE"), as well as conspiring to distribute cocaine and other offenses. 230 F.3d at 1044. The Supreme Court ultimately ruled that the defendant could not be convicted of both CCE and conspiring to distribute cocaine because conspiring to distribute cocaine is a lesser included offense of CCE. *Id.* On remand, the district court vacated the conviction for conspiring to distribute cocaine, and imposed the same sentence

9

as in the original judgment. *Id.* In considering the defendant's subsequently-filed Section 2255 motion, the district court vacated the CCE conviction and reinstated the conspiracy conviction. *Id.*, at 1045. The Seventh Circuit affirmed, holding that Section 2255 was "broad and flexible"[2] enough to authorize the reinstatement and pointing out that the conviction "was vacated only because it was an included offense of the CCE conviction." *Id.,* at 1047-48. "At least in circumstances where a conviction was vacated only because it is an included offense of another conviction, this vacated conviction should be considered part of the sentencing package which the defendant has challenged, and so subject to reinstatement if the conviction in which it is included also is vacated." *Id.; cf. Rutledge v. United States,* 517 U.S. 292, 306, 116 S. Ct. 1241, 1250, 134 L. Ed. 2d 419 (1996) ("There is no need for us now to consider the precise limits on the appellate courts' power to substitute a conviction on a lesser offense for an erroneous conviction of a greater offense.")

The Section 924(c) convictions the Government seeks to reinstate here are *not* lesser included offenses of any of Petitioner's other convictions, nor are they part of "the sentencing package" challenged by Petitioner in this case. The convictions were vacated at the direction of the Sixth Circuit (and subsequent agreement of the parties) in direct appeal proceedings over three years ago. Furthermore, the Court is not persuaded the Sixth Circuit would adopt the "broad and flexible" view of Section 2255 espoused by the Seventh Circuit in *Rutledge.* Accordingly, the Court declines to "reinstate" Petitioner's previously vacated Section 924(c) convictions.

---

[2] The *Rutledge* court construed the terms "resentence" and "correct the sentence," for purposes of Section 2255, as "grants of broad and flexible power to the district court." *Id.*, at 1047. As noted above, the Sixth Circuit has recently construed "correction" of a sentence much more narrowly. *Flack,* 941 F.3d at 241 (limiting "correction" of a sentence to acts that are "arithmetical, technical, or mechanical.")

10

Case 3:17-cv-01329   Document 55   Filed 06/11/20   Page 10 of 16 PageID #: 276

**D. Multiplicitous Indictment**

Petitioner argues the indictment violated the Double Jeopardy Clause by charging two conspiracies instead of one with regard to each home invasion. The Double Jeopardy Clause of the Fifth Amendment protects against three harms: second prosecution for an offense after initial acquittal; second prosecution for an offense after an initial conviction; and multiple punishments for the same offense. *See, e.g., Volpe v. Trim,* 708 F.3d 688, 696 (6th Cir. 2013). The rule against "multiplicity," or charging a single offense in more than one count, is to prevent the third harm. *Id.*

After trial, Petitioner moved for a judgment of acquittal based on a similar Double Jeopardy argument, which was rejected by Judge [Todd] Campbell:

> Specifically, the Defendant argues that: (1) the Government failed to establish the four separate conspiracies charged in the Indictment, and therefore, under the Double Jeopardy Clause, he should be acquitted of all but one conspiracy count . . .
>
> * * *
>
> The Double Jeopardy Clause prohibits multiple prosecutions for the same offense. With regard to the crime of conspiracy, the Sixth Circuit has adopted a 'totality of the circumstances' test to determine whether the allegations in an indictment support a conviction of more than one conspiracy. United States v. Sinito, 723 F.2d 1250, 1256 (6th Cir. 1983). The test requires the court to consider the following elements: (1) time; (2) persons acting as co-conspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged by the government or any other description of the offenses charged which indicates the nature and scope of the activity which the government sought to punish in each case; and (5) places where the events alleged as part of the conspiracy took place. Id. Where several of these factors differ between the conspiracies, the court has explained, the conclusion follows that the alleged conspiracies are separate and distinct offenses. Id., at 1257. See also United States v. Kistner, 2014 WL 5438810, *3-4 (6th Cir. Oct. 28, 2014).
>
> As the Defendant's challenge is made post-trial, the Court will apply these factors to the evidence adduced at trial. The two home invasions occurred approximately two weeks apart, at separate locations, and involved different participants. In addition, the evidence indicated that the Defendant targeted the

> home in the second robbery, and Co-Defendant Nickless Whitson targeted the home in the first robbery. For these reasons, the Court is persuaded that the Hobbs Act robbery conspiracy charged in Count One and the drug trafficking conspiracy charged in Count Three are separate and distinct from the Hobbs Act robbery conspiracy charged in Count Five and the drug trafficking conspiracy charged in Count Seven.
>
> As for the conspiracies charged on the same date with the same participants, the object of each conspiracy is a different statutory offense – Hobbs Act robbery or drug trafficking. Thus, Counts One and Three are separate and distinct from each other, as are Counts Five and Seven. Applying the Sinito factors to the evidence adduced at trial, therefore, the Court concludes that the Defendant's four conspiracy convictions do not violate the Double Jeopardy Clause.

(Doc. No. 838, at 2-3 in Case No. 3:12-cr-00013).

On appeal, Petitioner raised a Double Jeopardy challenge in which he argued "he should have been charged with just one Hobbs Act conspiracy and one drug trafficking conspiracy, not the two he received for each robbery." *United States v. Vichitvongsa,* 819 F.3d at 272-73. The appeals court rejected Petitioner's argument, finding that the *Sinito* factors did not support an overarching conspiracy involving both home invasions. *Id.*, at 273-74.

In a more recent case, the Sixth Circuit applied "the *Blockburger* test" to determine whether an indictment was multiplicitous for charging two separate conspiracies instead of a single, multi-faceted conspiracy. *United States v. Patel,* 694 Fed. Appx. 991, 993-94 (6th Cir. 2017). To determine if multiplicity exists, the court explained, it must first be determined whether Congress intended to punish each statutory violation separately. *Id.*, at 994. When congressional intent is unclear, the court applies the "general test" for compliance with the Double Jeopardy Clause, often called "the *Blockburger* test," which asks "whether each provision requires proof of a fact which the other does not." *Patel,* 694 Fed. Appx. at 994 (quoting *Blockburger v. United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)); *United States v. Swafford,* 512 F.3d 833, 844 (6th

12

Cir. 2008).

Applying the *Blockburger* test, the court concluded that convictions for participating in a health care fraud conspiracy under 18 U.S.C. § 1349, and in a kickback conspiracy under 18 U.S.C. § 371, were not multiplicitous. *Patel,* 694 Fed. Appx. at 994. The court went on to reject the defendant's argument that the court apply the "totality of the circumstances" test of *United States v. Sinito, supra*, because "we decided [in *United States v. Fowler*, 819 F.3d 298, 308 n. 4 (6th Cir. 2016)] that the *Blockburger* test should be applied when determining whether convictions for violations of § 1349 and § 371 are multiplicitous." *Id.* The court also pointed out that *Sinito* was factually distinguishable because the two conspiracies at issue there were charged under the same statute. *Id.*

Applying *Blockburger* here, the Court concludes that Petitioner's convictions for participating in a drug trafficking conspiracy under 21 U.S.C. § 846, and a conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951, for each home invasion, are not multiplicitous. The drug trafficking conspiracy conviction required the government to prove: (1) an agreement to violate the drug laws; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy. *United States v. Wettstain,* 618 F.3d 577, 584 (6th Cir. 2010). The Hobbs Act conspiracy conviction required the government to prove Petitioner: (1) interfered with interstate commerce; and (2) conspired to commit robbery. *Vichitvongsa,* 829 F.3d at 270. The drug trafficking conspiracy conviction requires proof that Petitioner agreed to violate the drug laws, and the Hobbs Act conspiracy conviction does not. Conversely, the Hobbs Act conspiracy conviction requires proof that Petitioner agreed to commit robbery, and the drug trafficking conspiracy conviction does not.

13

The same result follows if the Court applies the *Sinito* factors because the conspiracies have different objects, as Judge [Todd] Campbell explained in his Order. For these reasons, Petitioner's Double Jeopardy challenge to the conspiracy convictions is without merit.

### E. **Sufficiency of the Evidence**

Petitioner argues the evidence supporting his drug trafficking conspiracy convictions was insufficient. As the Government argues, however, a challenge to the sufficiency of the evidence generally is not cognizable in a Section 2255 proceeding. *Buchanan v. United States,* 191 F.3d 451 (6th Cir. 1999); *United States v. Osborn,* 415 F.2d 1021, 1024 (6th Cir. 1969).

Even if the Court considers the claim on the merits, however, it would not be successful. A defendant claiming insufficiency of the evidence must show that, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Vichitvongsa,* 819 F.3d at 270 (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). Petitioner cannot meet this standard. There was ample evidence at trial, provided by Petitioner's co-defendants and others, that Petitioner and his co-conspirators agreed to rob the La Vergne house hoping to obtain drug proceeds and cocaine. The evidence also showed Petitioner and his co-conspirators agreed to rob the Smith County house hoping to obtain drug proceeds and marijuana. The Sixth Circuit referenced that evidence on appeal. *Vichitvongsa,* 819 F.3d at 265, 272 ("As for the La Vergne robbery, defendant and his co-conspirators targeted the residence of a cocaine dealer believing it contained hundreds of thousands of dollars and several kilos of cocaine;" "Vichitvongsa and others concocted a plan to rob Daniel Crowe's house . . . defendant told others there would be extensive amounts of marijuana there."). Both agreements were actually carried out, in a violent way, though

14

the participants failed to locate the cash and drugs they hoped to obtain. Petitioner has failed to establish that "no rational trier of fact" could have found the essential elements of the drug conspiracy offenses beyond a reasonable doubt.

**F.   Ineffective Assistance of Counsel**

In order to prevail on an ineffective assistance of counsel claim, the burden is on the petitioner to show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) the deficiency was prejudicial to the defense. *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Garza v. Idaho*, ___ U.S. ___, 139 S. Ct. 738, 744, 203 L. Ed. 2d 77 (2019). The court need not address both requirements if the petitioner makes an insufficient showing on one. *Strickland*, 104 S. Ct. at 2069.

An attorney's performance is considered deficient "if counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688; *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). To prove deficient representation, the petitioner must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.,* at 687. In reviewing counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.,* at 669.

To establish prejudice, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The likelihood of a different result "must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112, 131 S. Ct. 770, 792, 178 L. Ed. 2d 624 (2011).

15

Petitioner argues counsel was ineffective for failing to challenge his Indictment as multiplicitous, and for failing to challenge the sufficiency of the evidence supporting his drug trafficking convictions. As explained above, such challenges would have been rejected as without merit. As the arguments were meritless, counsel was not ineffective for failing to raise them. *See, e.g., Coley v. Bagley,* 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999) ("[T]here can be no constitutional deficiency" in failing to raise meritless arguments); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) (counsel is not required to make meritless arguments to avoid a charge of ineffective assistance of counsel.) Thus, Petitioner has failed to establish he received the ineffective assistance of counsel in his criminal proceedings.

## IV. Conclusion

For the reasons set forth above, the Court concludes Petitioner's request for Section 2255 relief is granted in part, and denied in part.

If Petitioner gives timely notice of an appeal from the Court's Memorandum and Order, such notice shall be treated as an application for a certificate of appealability, 28 U.S.C. § 2253(c), which will not issue because Petitioner has failed to make a substantial showing of the denial of a constitutional right. *Castro v. United States,* 310 F.3d 900 (6th Cir. 2002).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE